REYNOLDS et al. v. STANDARD PAINT CO.

(Circuit Court of Appeals, Third Circuit. June 14, 1895.)

No. 11.

1. PATENTS—INVENTION—SEVERAL PATENTS FOR SAME THING.

   After the granting of several patents covering the use of maltha (a residuum obtained in the distillation of petroleum), with various compounds, for coating paper, cloths, and roofing fabrics, and especially of a patent for paper "painted or saturated with a compound of maltha and bisulphide of carbon," *held*, that there was no patentable invention in dispensing with the use of a solvent, and applying pure maltha to paper as a coating substance; and that the case came within the rule that a second patent cannot issue for the same invention, especially to the same patentee.

2. SAME—PAPER COATED WITH MALTHA.

   The Pearce and Beardsley patent, No. 378,520, for a new article of manufacture, consisting of paper coated or saturated with "maltha," *held* void for want of invention.

Appeal from the Circuit Court of the United States for the District of New Jersey.

This was a bill by the Standard Paint Company against James S. Reynolds and Henry J. Bird for alleged infringement of a patent. The circuit court denied a motion for a preliminary injunction (43 Fed. 304), but afterwards entered a decree for complainant upon final hearing (65 Fed. 509). Defendants appeal.

Henry P. Wells and T. B. Wakeman, for appellants.

Willard Parker Butler, for appellee.

Before ACHESON, Circuit Judge, and WALES and BUFFING-TON, District Judges.

ACHESON, Circuit Judge. By the decree of the court below the appellants were adjudged to have infringed, and were enjoined from the further infringement of, letters patent No. 378,520, dated February 28, 1888, granted upon the application of Truman J. Pearce and Melvin W. Beardsley, filed March 9, 1887.

The patent has a single claim, namely: "As a new article of manufacture and of commerce, paper coated or saturated with maltha, substantially as herein set forth." In order to ascertain the meaning and scope of the claim, resort must be had to the specification, which describes maltha thus: "The product and substance known as 'maltha,' which we employ and utilize in the manufacture of our improved paper, is the solid residuum obtained in the distillation of the heavier grades of petroleum." From the history of the alleged invention, as disclosed by the evidence, it appears that the experiments and operations of the inventors were carried on exclusively in California, with the heavy grades of petroleum there found. This record shows that before the patent in suit was applied for Pearce and Beardsley had already obtained no less than five other patents relating to this same maltha and its uses. The earliest of these patents, No. 338,868, which bears date March 30, 1886, is for a composition consisting of maltha and bisulphide of carbon. In the specification of that patent, maltha is declared by the inventors to be "the base of our composition," and it is stated that it may be utilized in a cold state, without the agency of heat, by uniting with it a fluid solvent of suitable character to reduce the maltha and hold it in solution, and bisulphide of carbon is suggested as best adapted for that purpose. The specification further sets forth that the composition will form "a thoroughly waterproof and weatherproof" paint or coating for the surfaces of wood and metal; that "it will protect leather and fibrous and textile substances"; and that it "will be found to possess the peculiar and very valuable property of resisting the action of acids and alkalies." It is also stated, that "the qualities and properties of hardness, tenacity, pliability, and elasticity, peculiar to and inherent in the maltha," may be varied and secured in different degrees by adding to the composition other ingredients, such as asphalt, resin, sulphur, and paraffine. And finally it is said: "From the foregoing description and illustrations, a person skilled in the preparation and manufacture of paints and compositions of the kind to which our invention appertains will understand how to produce and make the composition in any desired form or grade of consistence from the aforesaid product."

Four patents of this series for the use of maltha, namely, No. 348,993, No. 348,994, No. 348,995, and No. 348,996, were issued on September 14, 1886. No. 348,993 is for all kinds of cloths, felts, etc., and all kinds of texture and fabrics, other than paper, treated with

a compound of bisulphide of carbon and maltha. No. 348,994 is for electric conductors covered with the same mixture. No. 348,995 is for paper coated with the same compound, the claim being in these words: "As a new article of manufacture and commerce, paper painted or saturated with a compound of bisulphide of carbon and maltha, substantially as herein set forth." No. 348,996 is for roofing fabric "composed of maltha and a basis or foundation of fibrous or textile fabric, with or without a backing of paper." The specification of this patent states that the maltha can be applied to the fibrous or textile foundation fabric either by the "hot method" or by the "cold method," the maltha in the former case being brought to a plastic state by the application of heat, while in the latter method it is reduced to a proper consistency by means of a suitable solvent, such as bisulphide of carbon; and it is added that "the results may be said to be equally effective as regards the qualities and properties secured in the finished article."

The proofs establish, and indeed the complainant's own expert testified, that prior to the application for the patent in suit coated waterproof and nonconducting papers were in common use, and were made in a great variety of ways, by applying to the paper, either in a melted condition or in solution, many different substances, those substances being used separately and singly, or being mixed with each other in different proportions; oils, waxes, paraffine, coal tar, asphaltum, and liquid products of petroleum being among the materials most commonly employed. It also appears that the method of coating paper described in the patent in suit was old. It may then be confidently affirmed that whatever of novelty, if any, is to be found in this patent is in the substitution of maltha pure and simple for the coating substances or compositions previously used.

The alleged infringing paper was made under and in conformity with letters patent No. 426,633, dated April 29, 1890, granted to Henry J. Bird for an improvement in "waterproofing compositions for paper." The Bird compound consists of a mixture of "the pitchy material from the distillation of petroleum," designated as "petrocite" throughout this record, "petroleum residuum," known as "tailings," and Trinidad asphalt, in the proportions of 50 to 60 per cent. of petrocite, 20 to 35 per cent. of tailings, and 10 to 15 per cent of asphalt; to which is added a small proportion of "Carnauba wax," to act as a drier, to prevent sticking.

The proof discloses that the maltha of the patent in suit is the product of a single distillation of the "heavier grades" of petroleum; which distillation is carried on at a comparatively low temperature. On the other hand, petrocite—the substance employed by the appellants, and the use of which constituted their alleged infringement—is obtained from the light grades of petroleum common to Pennsylvania and other Eastern states, and is the product of a secondary distillation, carried on at an exceedingly high temperature. Its method of production is in this wise: The crude oil is subjected to a distillation process, during which kerosene—the refined illuminating oil of commerce—is produced. When the kerosene is driven off,

there remains a small residuum of petroleum tar, which is a distinct article of commerce. The petroleum tar is the subject of a second distillation—a destructive distillation—resulting in several products, according to the stage to which the process is carried. One of these products is petrocite. The method whereby this substance is produced is described in letters patent No. 239,260, dated March 22, 1881, issued to Julius J. Livingston, for a plastic from petroleum, styled in the patent "petroleum-asphaltum." That product is the petrocite which the appellants used in their paper-coating composition. Notwithstanding the difference in the methods of production of petrocite and the maltha of the patent, the court below decided that they are the same thing, and therefore held that the defendants (the appellants) were infringers. In the view we take of the case, it will not be necessary for us to express an opinion upon the question of the identity of petrocite and maltha, nor yet upon the question whether or not the words of the patent, "the solid residuum obtained in the distillation of the heavier grades of petroleum," impose upon the claim such a limitation as excludes petrocite. Aside altogether from these considerations, and waiving also the further question whether a patent granted in the year 1888 for the use of maltha by itself is violated by the use of a composition which has petrocite as one of its ingredients, the case, we think, is with the appellants.

In the first place, as we have already seen, the alleged infringement by the appellants was in the use by them of the product which was patented by Livingston in 1881 under the name of "petroleum-asphaltum," but which is now called "petrocite." Livingston's patent distinctly sets forth that that substance is suitable for the purposes to which asphaltum had theretofore been applied. The specification states that it is "of such superior quality that it is adapted for use for purposes for which Trinidad or other like natural asphaltum has heretofore been thought to be necessary." Now the proofs conclusively show that long prior to the date of Livingston's patent natural asphaltum was largely and openly used in the United States in coating paper. Livingston, then, having disclosed to the public as early as the year 1881 that the artificial petroleum-asphaltum, described in and covered by his patent, could be used for all purposes as a substitute for natural asphaltum, and the latter substance having been previously commonly used for coating paper, argument is not needed to show that no patent could lawfully be granted in 1888, upon an application made in 1887, which would prevent the use, in the coating of paper, of the asphaltum or petrocite of the Livingston patent. Hence, that patent was a complete defense to the complainant's suit.

But then again, having regard to the five earlier patents appertaining to maltha granted to Pearce and Beardsley, the patent in suit, in our judgment, is destitute of patentable novelty. The very first patent of this series, that of March 30, 1886, for the compound of maltha and bisulphide of carbon, set forth the peculiar qualities and properties inherent in maltha which make it a suitable waterproof and weatherproof coating body for fibrous and

textile substances and the surfaces of other things. The purpose of the invention of that patent was to utilize maltha in a cold state by dissolving it and holding it in solution by means of a solvent, thus dispensing with the common melting agency of heat. After naming bisulphide of carbon as the best solvent for the purpose, the specification proceeds thus: "Bisulpide of carbon has also great penetrating power, and after evaporation, when the composition is spread on or otherwise applied to a surface, it leaves a solid, dry, firm coat or covering, which is elastic and pliable, and which will protect the surface or substance it is applied to both against the elements and against acids and alkalies." The roofing-fabric patent of September 14, 1886, prescribed the application of maltha alone by the hot method, stating that the results were equally satisfactory whether the hot or the cold method was pursued. Then, not stopping to discuss No. 348,993 and No. 348,994, we have the patent No. 348,995 for "paper painted or saturated with a compound of maltha and bisulphide of carbon." Now, after this lavish issue of patents involving the same subject-matter, and to the same patentees, could the monopoly be still further broadened and prolonged by the grant of a later patent for "paper coated or saturated with maltha" alone? We have no hesitation in responding negatively. Such an extension of exclusive privileges would be a sheer abuse of the patent laws. Assuredly, in view of the prior state of the art, the mere dispensing with the solvent, and the application of pure maltha to paper as a coating substance, did not involve invention. Moreover, as is indicated by the above quotation from the first of these maltha patents, bisulphide of carbon quickly evaporates, and thus paper treated with the compound of the prior patent (No. 348,995), after the evaporation of the solvent, becomes essentially "paper coated or saturated with maltha." In our opinion, this case is clearly within the principle declared in Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310,—that no patent can rightfully issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ. Upon the case presented by this record, the court below should have dismissed the bill of complaint.

The decree of the circuit court is reversed, and the case is remanded to that court, with a direction to enter a decree dismissing the bill with costs.